# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : CRIMINAL NO. 09-728-1 |
| CHARLES LAMONT TOLER | : |

**GOLDBERG, J.**                                                                                                October 1, 2010

## MEMORANDUM

On May 24, 2010, a jury convicted Defendant Charles Lamont Toler of possession with intent to distribute 500 grams or more of cocaine, 21 U.S.C. § 841(a)(1); possession with intent to distribute 500 grams or more of cocaine within 1,000 feet of a school, 21 U.S.C. § 860(a); possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1); and convicted felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1). Defendant now moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) or, in the alternative, a new trial pursuant to Rule 33. For the following reasons, I will deny both motions.

## I. STANDARD OF REVIEW

Federal Rule of Criminal Procedure 29(c) permits a defendant to "move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later . . . . If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." A motion for a post-verdict judgment of acquittal requires the Court to "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." United States v. Wolfe, 245 F.3d 257, 261 (3d Cir. 2001); see also Jackson v. Virginia,

443 U.S. 307, 319 (1979). I must "draw all reasonable inferences in favor of the jury verdict." United States v. Anderskow, 88 F.3d 245, 251 (3d Cir. 1996). "Thus, a finding of insufficiency should 'be confined to cases where the prosecution's failure is clear.'" United States v. Smith, 294 F.3d 473, 477 (3d Cir. 2002) (quoting United States v. Leon, 739 F.2d 885, 891 (3d Cir. 1984)).

Alternatively, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. Pro. 33. "Motions for a new trial based on the weight of the evidence are not favored . . . . Such motions are to be granted sparingly and only in exceptional cases." Gov't of the V.I. v. Derricks, 810 F.2d 50, 55 (3d Cir. 1987) (citing United States v. Martinez, 763 F.2d 1297, 1313 (11th Cir. 1985)). After independently weighing the evidence, a new trial may be ordered only if the verdict was contrary to the weight of the evidence and "there is a serious danger that a miscarriage of justice has occurred–that is, that an innocent person has been convicted." United States v. Silveus, 542 F.3d 993, 1004-05 (3d Cir. 2008).

## II. ANALYSIS

### A. Sufficiency of the Evidence

Defendant contends that the evidence introduced by the Government was insufficient to support his convictions on each of the four counts. After reviewing the record in the light most favorable to the prosecution and drawing all reasonable inferences in favor of the jury's verdict, I will deny Defendant's motion for a judgment of acquittal because any rational trier of fact could have found Defendant guilty based upon the Government's evidence. I will also deny the Defendant's motion for a new trial because, after independently weighing the evidence, I find the verdict was not contrary to the weight of the evidence.

1. **Weight of the Cocaine**

Defendant contests the testimony of the Government's expert witness who "merely" weighed bags and did not distinguish between whether she was weighing cocaine or cocaine mixed with an additive. Defendant concludes that her testimony about weight does not support a finding that the weight exceeded 500 grams. This argument ignores the fact that section 841(b) penalizes possession with intent to distribute "500 grams or more of a mixture or substance containing a detectable amount of . . . cocaine." 21 U.S.C. § 841(b)(1)(B)(ii)(II); see also United States v. Williams, 894 F.2d 208, 215 (6th Cir. 1990). Defendant further argues that the expert "merely" sampled the contents of the bags in order to conclude they contained cocaine and therefore her conclusions cannot support the jury's verdict. I find that it was not contrary to the weight of the evidence for the jury to conclude from the expert's testimony that the samples she tested from each bag were of a mixture or substance containing cocaine and that the bags contained over 500 grams of such cocaine mixture or substance.

2. **Knowing and Intentional Possession of Cocaine and Firearm**

The Government was required to prove beyond a reasonable doubt that Defendant knowingly or intentionally possessed the controlled substance, 21 U.S.C. § 841, and knowingly possessed the firearm, 28 U.S.C. § 924(c)(1)(A). Defendant need not have actually possessed the drugs or firearm in order to have knowingly possessed them. "Constructive possession exists if an individual knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons. Constructive possession necessarily requires both dominion and control over an object and knowledge of that object's existence." United States v. Iafelice, 978 F.2d 92, 96 (3d Cir. 1992).

3

With respect to Counts I and II, Defendant contends there was insufficient evidence to prove beyond a reasonable doubt that he knowingly or intentionally possessed with intent to distribute 500 grams or more of cocaine. Similarly, with respect to Counts III and IV, Defendant argues that there was insufficient evidence to prove beyond a reasonable doubt that he knowingly possessed a firearm in furtherance of a drug trafficking crime. Defendant does not dispute that he possessed the drugs found on his body or in his rental vehicle. He only disputes that he knowingly possessed the firearm and cocaine found in the apartment. Defendant's argument rests on his denial at trial that he was aware there were drugs in the apartment.

I find that the Government's proof of the following, taken together, was more than sufficient for the jury to conclude that Defendant had constructive possession of over 500 grams of a mixture or substance containing cocaine and the firearm found in the apartment: Defendant, prior to the day of his arrest, was observed numerous times coming in and out of the apartment; he had a key to the apartment; he had cocaine on his person and in his vehicle on the day of his arrest; the officers testified that, after he was arrested, he indicated with his head and foot where the officers could find the drugs in the room; that within the boxes containing the drugs and paraphernalia found in the closet were Defendant's personal papers including birth certificate and social security card; and that Defendant provided the officers with the combination to the safe inside of which was found drugs, cash and the firearm.[1]

Defendant contends his case is similar to United States v. Brown, 3 F.3d 673, 682 (3d Cir.

---

[1] While Defendant argues that the Government relied exclusively and improperly on the expert testimony of Officer Tyler to establish intent, he has not cited any of the Officer's testimony in support of this conclusory argument. As recited supra, the Government introduced numerous items of evidence which established intent and therefore I find Officer Tyler's testimony was not improperly relied upon.

1993) in which the Court of Appeals found that the defendant's conduct was "consistent with that of someone with access to or residing at the Brown residence, but with no control over the drugs. . . therein." Here, however, there is a plethora of evidence establishing that Defendant had control over the drugs. As previously noted, he had a key to the apartment, knew the combination to the safe containing the drugs and firearm, the drugs were found in the same box as his personal documents and mail addressed to him, he was able to correctly tell the officers where the drugs were located and the same type of drugs found in the apartment had been seized from his person and vehicle. Thus, I find Brown is distinguishable.

Defendant also argues that he could not have had possession of the firearm because it was locked in the safe. However, constructive possession does not require that Defendant be able to immediately access it at the time of the search; rather it must be shown that he had dominion and control over the firearm. Clearly, Defendant had such dominion and control because he knew the combination to the safe and could access it when he wanted or needed to. See United State v. Sparrow, 371 F.3d 851, 853-54 ("While the location of a firearm is admittedly relevant, immediate accessibility at the time of search or arrest is not a legal requirement for a § 924(c) conviction . . . . In fact, a number of courts have upheld § 924(c) convictions when the firearm in question was not easily or immediately accessible.") (citing United States v. Garner, 338 F.3d 78, 80-81 (1st Cir. 2003) (affirming conviction when firearms and drugs were found in a hole in a wall of a building's common basement and the defendant was selling drugs out of an apartment in the building); United States v. Luciano, 329 F.3d 1, 3-6 (1st Cir. 2003) (affirming conviction when a firearm and drugs were found in a ceiling crawlspace, requiring the agent to stand on a chair and climb into the crawlspace); United States v. Morgan, 33 Fed. Appx. 603, 605-06 (3d Cir. 2002) (affirming

conviction when firearms and drugs were found together in a drop ceiling while the defendant was away from his apartment); <u>Bressi v. United States</u>, No. Civ. A. 01-407, 2001 WL 395289 (E.D. Pa. Apr. 5, 2001) (denying a habeas petition when a firearm and drugs were found in a locked safe)).

### 3. Schoolyard Statute

During the course of its deliberations, the jury requested clarification with respect to Count II.[2] The jury asked, "Can you clarify if the intent to distribute means that he was going to distribute the cocaine within 1,000 [feet] of a school or does the intent mean to just have possession of the cocaine within 1,000 feet with the intent to distribute outside of the 1,000 [feet] of the school?" (N.T. 5/21/10, p. 168.) In accordance with <u>United States v. Rodriguez</u>, 961 F.2d 1089 (3d Cir. 1992), I instructed the jury that:

> [T]he Government must prove beyond a reasonable doubt that the Defendant possessed the cocaine, and remember this case is about not just possession, possession with the intent to deliver. So the Government must prove beyond a reasonable doubt that the Defendant possessed the cocaine with the intent to deliver and that occurred that is, the possession with the intent to deliver, that occurred within 1,000 - - that act occurred within 1,000 feet of the school. The Government does not have to prove anything about an intended location for the distribution, they need only prove that the Defendant possessed the drugs within 1,000 feet of the elementary school remembering that the possession has to be coupled with an intent to distribute.

---

[2] Section 860(a) provides, in relevant part:

> Any person who violates section 841(a)(1) of this title . . . by . . . possessing with intent to distribute . . . a controlled substance in or on, or within one thousand feet of, the real property comprising a public . . . elementary . . . school . . . is . . . subject to (1) twice the maximum punishment authorized by section 841(b) of this title; and (2) at least twice any term of supervised release authorized by section 841(b) of this title for a first offense . . . .

21 U.S.C. § 860(a).

6

(N.T. 5/21/10, p. 177.) Defendant contends this instruction was in error. In the alternative, Defendant contends that the Government failed to prove beyond a reasonable doubt that the cocaine was possessed or located within 1000 feet of the subject school.

Defendant, citing a law review article and no case law, argues that Rodriguez was incorrectly decided because to hold otherwise would take away the mens rea requirement of § 860. In summarizing its interpretation of § 860, the Court of Appeals squarely rejected this argument:

> We and our sister courts have established guidance as to what must be presented to prove an § 860(a) violation. First, the government does not have to show that the defendant had knowledge that he was possessing narcotics within 1,000 feet of a school. United States v. Dimas, 3 F.3d 1015, 1022 (7th Cir. 1993); United States v. Falu, 776 F.2d 46, 50 (2d Cir. 1985) ("[Section 860(a)] contains no express *mens rea* requirement for the distance element of the offense."). Second, the *mens rea* element for § 860(a) is found in the required underlying violation of § 841(a)(1), which calls for a knowing possession of narcotics with intent to distribute. Falu, 776 F.2d at 50 ("This construction of [section 860(a)] does not criminalize otherwise innocent activity, since the statute incorporates section 841(a)(1), which already contains a *mens rea* requirement . . . ."). Third, under § 860(a), the government does not need to prove that the defendant intended to distribute the narcotics within 1,000 feet of a school. United States v. Rodriguez, 961 F.2d 1089, 1092 (3d Cir. 1992) ("Since the *actus reus* for this offense is possession, it follows that possession of the drugs, not the intended location for distribution, must be located within 1000 feet of a school.").

United States v. Jackson, 443 F.3d 293, 299 (3d Cir. 2006). Accordingly, I find Defendant's argument untenable.

Alternatively, Defendant argues that the Government only presented evidence that the apartment was 875 feet from the real property line of the school and the statute requires proof that the controlled substance be possessed within 1000 feet of the school building. I agree with the Government that the plain meaning of "real property" encompasses not just the building proper but

7

also the land upon which the school building sits. See Black's Law Dictionary (8th ed.) (defining "real property" as "land and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land"). Furthermore, this interpretation or "real property" is more consistent with Congress's intent in enacting the statute than Defendant's narrow construction. See Rodriguez, 961 F.2d at 1092. ("Congress made clear that it did not wish to confine the schoolyard statute to cases in which a defendant distributes or intends to distribute drugs near a school. Rather, Congress was more broadly concerned about serious drug crimes that occur in proximity to schools.").

### 4. In or Affecting Interstate Commerce

Defendant also contends that the evidence was insufficient to prove beyond a reasonable doubt the interstate nexus component of Count IV. His argument is based on his theory put forth at trial that the Smith and Wesson firearm could have been a copy cat manufactured right here in Pennsylvania. Special Agent Barry DeProsperis testified the firearm had markings indicating it was manufactured in New England. There was no indication that the gun was a copy cat. Accordingly, the jury's conclusion that the gun was not a copy cat and was indeed manufactured in New England was not contrary to the weight of the evidence.

### 5. In Furtherance

With respect to Count III, the Government was required to prove beyond a reasonable doubt, inter alia, that Defendant knowingly possessed the firearm *in furtherance of* the drug trafficking crime. 18 U.S.C. § 924(c)(1)(A). Defendant challenges the sufficiency of the evidence introduced to prove this element. Again, the jury's conclusion that Defendant was guilty of knowing possession of the firearm in furtherance of a drug trafficking crime was not contrary to the weight of the

evidence given the proximity of the firearm to the cocaine and large sums of money–which were located in the safe with the gun.[3] See United States v. Sparrow, 371 F.3d 851, 853 (3d Cir. 2004) (holding that Courts may consider the proximity of the firearm to the drugs or drug profits to determine whether a gun was possessed in furtherance of a drug trafficking crime; finding that one loaded .22 caliber pistol found in a concealed floor compartment along with nine Ziploc bags of marijuana and $140 in cash was possession in furtherance of the defendant's drug activities).

### B. Expert Witnesses

Defendant contends that Officer Tyler and Special Agent Deprosperis were wrongly admitted as expert witnesses because they did not meet the criteria of Rule of Evidence 702. Specifically, Defendant argues they were not qualified because they did not author any articles nor had they been "peer reviewed." This is the same argument Defendant raised in his motion in limine to exclude the testimony of Officer Tyler as an expert. As this was addressed in my Order of May 12, 2010, I incorporate that reasoning here in denying Defendant's present motion.

### C. Prior Rulings of This Court

Finally, Defendant argues that this Court erred in denying each of the following motions: (1) motion to suppress the items seized in the house; (2) motion to suppress the items seized in the safe; (3) motion for identification of the confidential informant; (4) opposition to the admission of the telephone conversation recordings; and (5) motion to preclude use of his convictions and parole status on cross examination. He relies exclusively on his prior motions and briefs, raising no new

---

[3] Defendant mistakenly states in his brief that the Smith and Wesson was not proximate to the drugs and that the drugs were only located in the closet. (Def.'s Memo., p. 12.) However, the Government introduced evidence at trial that two sandwich bags of cocaine weighing 37.3 grams were found in the safe with the gun.

arguments concerning why these motions should have been granted. In denying Defendant's present motions, I incorporate my Orders of March 3, 2010 and reasons stated at the hearing of February 23, 2010, (doc. no. 36, pertaining to items seized from the house and the safe) and (doc. no. 35, pertaining to the confidential informant); Order of April 28, 2010, and reasons stated at the hearing on April 26, 2010, (doc. no. 53, pertaining to the Government's Starks motion); and my ruling and reasons stated on the record during the trial, pertaining to the admission of his prior convictions and parole status.

      An appropriate Order follows.